PETERFIELD TURPIN,
who was brother of all the parties, by his testament, dated in february, 1789, among other devises, gave and bequeathed to the defeudent Horatio the land and plantation whereon his father lived, also 732 acres of land in Buckingham, near the head of Appomattox, and also ten negro slaves distinguished by names.
At that time, this testator owned not any of the things thus *138 given and bequeathed, and possessed only the land in Buckingham.
His father Thomas Turpin, who was owner of them, and possessor of all, except the Buckingham land, by his testament, dated in march, of the same year, gave the same lands and slaves to Peterfieid Turpin.
Both the testators are dead, the son having survived the father.
The plaintiff claimed a share of the lands and slaves, insisting they descended to the heirs of Peterfieid Turpin, who were his brothers, not being disposed of by his testament, because he had them not at the time when he made it, although he had them at the time when he died.
Some examinations of witnesses were taken, to prove, on one side, a revocation, and, on the other, a republication of his testament by Peterfieid Turpin ; but the proof was defective.
By the court, 8 day of november, 1791.
Decisions of questions', arising both on the english statutes, and on the customs of particular places in that country, authorizing alienations of land by testament, had declared the law to be, that a devise of land which the testator had not, i. e. of which he was not seised, at the time when he made the devise, was void, although he should have the land at the time when he died.
IVlemorable examples of these decisions occur, one on the statutes,^ the case between- Butler and Baker, 200 years ago, which, as Coke the reporter of it says, had been argued one and twenty times, and the other on the custom of gavelkind, in a case between the heir and widow, who was devisee, of William Bockenham, near 100 years ago, which is published, with the arguments, in the book called, law of devises and revocations.
If the law with us had not been altered, these two cases ■might have been relied upon, as authorities, in the present controversy, with respect to the lauds.
■ But a statute of this commonwealth, made in 1785, and taking effect in january, 1787, and therefore being the law by which the question in this case must be decided, hath enacted that every one, aged twenty one years or upwards, being of sound mind, and not a married woman, shall have power, at will and pleasure, by last will and testament in writing, to devise all the estate, right, title, and interest in possession, reversion or remainder, which he or she hath or, at the time of his or her death, shall have, of, in, or to, lands, tenements, or hereditaments.
By the terms of the statute, power being given to devise an *139 estate in possession, reversion, or remainder, which one hath, that is, at the time of making his testament hath, or an estate in (a) possession, reversion, or remainder which at the time of his death he shall have, in lands — power to devise a future or a possible, as well as a present or an actual estate ; the identity of the lands, said t> he given and bequeathed to Horatio 'Fur-pin, and the lands, in which Peterfield Turpin, at the time of his death, had an estate, being confessed ; and the devise either being a devise of the estate which Peterfield Turpin, at the time when he made his testament, had in the lands, or being a devise of the estate which at the time when he should die, he should have in them ; (for the devise must be understood in one of those two senses,) the only question in this case, as to the lands, is whether the words in the devise of them do or do not comprehend a future estate, that is, an estate which Peter-field Turpin at the time of his death should have in those lands ? if the words do comprehend that estate, Horatio Turpin hath a right to the whole lands of which the bill clames a share.
The devise, understood in the former sense, that is, a present inchoate alienation of the right which he then had in the lands, would be adjudged void ; unless the executor would have been bound to purchase the lands for the legatary or pay the value of them to him, out of the testators estate, as the executor, by the roman civil law, was bound to do, in a like case, where the testator knew the thing bequeathed not to be his. I. 1. II. tit. XX §4.; C. 1. YI. tit. XXXYII. I. 10. yea, if the testator had owned an estate in the lands, but an estate less than that which was bequeathed to him by his father, the devise, understood in that former sense, would have been void ; because an ademption of the legacy, without a republication of the testament, would have been wrought by the change of the estate devised.
But the devise maybe understood, with equal propriety, in the latter sense ; for the words i give and bequeath the land, and plantation where my father lived, also 732 acres of land in Buckingham, near the head of Appomattox, do not confine the devise to an estate, which Peterfield Turpin had in the lands at one time, more than to the estate which he should have in (hem at another time, indeed, the terms, i give, although they purport an immediate alienation of the thing given, are, when used *140 in a testament, from the nature of that act, no more than a declaration of a testators will, that the legatary, at a future day, shall have the thing said to be given to him, and even that not certainly, but subject to a change of will, which may appear by revocation, ademption, translation, &c.so that the terms, igive, in a testament, are understood more properly of a future, than of a present'time. and the testator, having a power to devise, and no doubt, expecting to own, a future estate in these lands, and willing in every event that his brother Horatio should succede to them, and not having altered that will, the law, which favours acts authorised by itself, as testaments are, will suppose the testator to have exercised his power to devise a future - state, and accordingly approve that exposition of the devise by which it will be valid ; that is, in the same sense, as if the testator had used these words : i give to Horatio Turpin, the land, Spc. if i have them at the time of my death:and do not alter my •will.
Whether the defendent Horatio hath a title also to the slaves bequeathed to him by the same paragraph in the testament? would not be a different, question from that already discussed, if the statute be supposed to have designed to comprehend slaves, which in some instances are an hereditary kind of property, in the term, hereditaments, used in the statute, to designate oue of the subjects of devises which it authorizes.
■ But this statute is supposed not to have comprehended slaves ; because tha. kind of property was bequeathable by the common law, which lands are said not to have been ; and .because, as the law is now, and always hath been, a request of slaves transfers the property of them in theN same manner as if they were chatels.
Then let the bequest of the ten slaves here be considered independently of the act of 1785, and as a bequest of chatels.
A man bequeaths slaves by their names, which at the time of 'making the testament were not his property, but afterwards became his property; whether hath the legatary a right to the slaves ?
Swinburne (part III. § VI. no. 17.) hath stated this case, without- any important variation, propounding the same question. in considering it, he observes that, by the civil law, the thing bequeathed is not due to the legatary, but in some few cases, he adds, by the laws of this realm ( Fmgland) it seemeth that toe are to distinguish whether some special thing be devised or riot, for if a special, or certain thing be devised, as if the testator do bequeath the manor of Dale, then tho the testator had no such manor, when the will was made, yet by the purchase made *141 afterwards, the testator is presumed to have had this meaning from the beginning, to purchase the same for the benefit of the legatary: and so the devise is good, but if the legacy be not special, but general, as if the testator do bequeath all his lands, then the testator having some lands at the time of making the testament, and purchasing other lands afterwards, those lands purchased after making the testament shall not pass.
'Phis writer quoted, f t the civil law, what is called the regula eatouiana, and for the eughsh law, the case between Brett and Rjglen, in Howdens commentaries ; neither of which is satisfactory, as to this question.
The regula eaUniaua, which occurs in Dig. lib. XXXIV. tit, VII. is this : quod si testamenti facti tempore deccssit testator, inutile ford: id hgaium, quandoeunque decesserit, non valet. this rule, in several instances there mentioned, is said to be false, it is true, without doubt, in other instances: e. g. if one, before he is the proper age, if one, non compos mentis, if a married woman, making a testament, and surviving the inability to perform such an act, die without a republication, the testament is void, no less than it would have been void if the inability had not ceased, befoie the death happened, but it seems an improper canon in many cases to which it may be extended, and perhaps is true only where the vice in the original constitution of the testament is defect of age, understanding, or freedom of will, in the testator.
The quotation from Plowdens commentaries is apposite to the principal case, and a rational opinion, but is not of decisive authority, because the example is a devise of lands, and because it is an opinion ouly of serjeaut Lovelese, and denied to be law by the chief justices Holt and Trevor, in their arguments of the ease on Bockenhams will.
Chief justice Holt, in his argument, on that occasion, mentions two cases, one in Goldesborough 93, and the other in March i37, which may seem, at first view, not unlike this; but, upon consideration, they are thought to differ from it, so as not to be applicable, in the former case, the surrender of the lease was an ademption of the legacy ; and in the latter case, if the executor did not assent to the legacy before the death of the legatary, who bequeathed the subject of' it, and whether he did assent or not doth not appear, the case cannot be compared with the principal case.
In this disquisition, any case adjudged, which is a direct authority, not being remembered, we must have recourse to some other topics.
If a bequest, like a gift among the living, were a present alie *142 nation or conveyance of a right in the thing said .to be given, the objection to the validity of this bequest must prevale, for the transition of a right, which doth not exist, or, rather before it exists, is preposterous.
But a bequest is not a present alienation ; the testator doth not intend nor doth the law declare it to be so. it is no more than the appointment of him whom the testator wishes to succeed him after his death in the ownership of the thing said to be bequeathed and why such an appointment should not be fulfilled, if the testator at his death, before which it is not intended to be effectual, have the thing, no good reason hath yet been, nor, as is believed, can be, assigned.
On the contrary, by the roman civil law, which is ordinarily thought a reasonable rule of decision, the bequest of that which the testator never had is valid in many cases, and in some cases, whether he knew or did not know the thing to be the property of another ; so that the executor was bound to purchase it for the legatary, or pay the value of it to him out of the testators estate, this is manifest by the Institutes and Code in the places before mentioned, and that this particular doctrine is still approved in those countries where that law has been generally adopted, appears by the Code de l’Humanite in the word LEGS, iff to sustain such an appointment, where the testator never owned the thing, be reasonable, to sustain it, if he do own the thing at the time of his death, when the succession is to take effect, can not be less reasonable, all other circumstances remaining the same.
And the appointment seems authorized by deductions from legal principles. ■ nothing is pretended to invalidate this bequest, but that the testator, when he made it, did not own the slaves said to be given, although when he died, he did own them, but, if the proposition that the testator must own the thing at the time of bequeathing it were true, which is not admitted, because it. is thought not possible to be proved, the testator in this case , is affirmed to have bequeathed the slaves at the time when he owned them, that is, to have bequeathed them when his father died ; for, the testament not having be eh revoked, the law supposes the benevolence of the testator towkrds the legatary to have continued, this is assumed as a proposition incontrovertible, now, the continuance of Peter-field Turpins desire, when he became owner of the slaves, that, after his death, his brother Horatio should have them, is by operation of law, a repetition or republication of the bequest at that time, because it hath the same effect; for a republication is no more than an evidence that the testators desire continues j *143 and if the law supposes it to continue, the republication is unnecessary. if indeed a man who had lands at the time of making his testament, devise his Ian ¡s, by a general description, and afterwards purchase other lands, a republication might perhaps be necessary, to transfer the after purchased lands, if necessary in any case. Holt, in his argument of the case on Bonkeuhams will, calls the notion, stated in the preceding part of this section, to wit, that the testator, eo insla/nli that he becomes owner of the thing devised, may be supposed to make his will, absurd and repugnant, but it is denied to be absurd and repugnant, and seems dictated by the spirit of the law, which doth not appoint a successor, unless the deceased owner hath omitted an appointment, and will always, if it can, establish the right of the testamentary successor.
The right of Horatio Turpin is thought to be supported no less by authorities, as far as those autuorities will apply, than by the principles of law and reason.
By a bequest of chatels generaly, those which are acquired after the testament was made, have been frequently adjudged, and are universaly admitted, to be transfered to the legatary, so that, if Pe erfield Turpin, who bequeathed some slaves to several of his relations, had bequeathed the residue of the slaves, without naming them, to his brother Horatio, he would have been intitled to these ten confessedly : but they who confess this deny him to be intitled to them in this case, where they are bequeathed to him by their names.
Tnis distinction, between a general and specific bequest, seems thus founded: its favourers say, the law allows a power to bequeath future acquisitions of chatels, by general descriptions, to prevent the inconvenience of making a testament, which otherwise might be necessary, every time changes, frequent in that kind of property, happen, whereas there is not the like reason to allow that power in the case of a specific bequest. but, if the opinion before explaned, be correct, the distinction doth not exist; the power of the testator is the same in both cases ; and the times when the bequest of chatels generaly, and the bequest of a specific thing, shall begin to operate upon the after acquired property, are the same ; and those times are when he becomes owner of the things ; although neither bequest is an act so complete as to transfer the property before his death.
Dismiss the bill.
The plaintiff appealed. [See it, 1 Wash. 75. — Ed.]
The decree was affirmed.

 No man, as is believed, will refer the terms, shall have, to an estate, in reversion or remainder only ; fir a reversion, or a vesied remainder is a present. estate, and a remainder contingent at the death of the testator, if his death were before the event, cannot be called an estate which the testator either had or should have.